**SO ORDERED.**

**SIGNED this 02 day of June, 2008.**



*Dale L. Somers*
**Dale L. Somers**
**UNITED STATES BANKRUPTCY JUDGE**

_____

OPINION DESIGNATED FOR ON-LINE USE AND PRINT PUBLICATION
# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re:<br><br>GAREY M. BROUILLETTE and<br>RETA G. BROUILLETTE,<br><br>      DEBTORS. | CASE NO. 07-10284<br>CHAPTER 7 |
| EDWARD J. NAZAR, Trustee,<br><br>      PLAINTIFF,<br><br>v.<br><br>WESTERN STATE BANK;<br>GARY M. BROUILLETTE; and<br>RETA G. BROUILLETTE,<br><br>      DEFENDANTS. | ADV. NO. 07-5165 |

**MEMORANDUM OPINION AND ORDER DENYING TRUSTEE'S COMPLAINT**

This is an adversary proceeding brought pursuant to 11 U.S.C. §§ 544(a) and 551.[1] The Chapter 7 Trustee seeks to avoid Western State Bank's mortgage lien in Debtors' dwelling (but not Debtors' real property) and preserve it for the benefit of the estate. The determinative issue is whether the dwelling is either a manufactured home or mobile home as defined by the Kansas Manufactured Housing Act, K.S.A. 58-4201, et seq. so that the exclusive manner for perfection of a lien in the home is by notation on a certificate of title. Trial was held on March 31, 2008. Plaintiff, Edward J. Nazar, the Chapter 7 Trustee (hereafter Trustee), appeared by L. Kathleen Harrell-Latham, of Redmond & Nazar, L.L.P. Defendant, Western State Bank (hereafter Bank) appeared by William F. Kluge, III. There were no other appearances at trial. After receiving evidence, admitting exhibits, and hearing the arguments of counsel, the Court took the matter under advisement. It is now ready to rule and, for the reasons stated below, denies the Trustee's complaint.

**FINDINGS OF FACT.**

On February 25, 1998, Debtors entered into a Home Equity Line of Credit Agreement with the Bank with a maximum principal balance of $45,000. At that time, Debtors granted the Bank a $45,000 mortgage on their homestead located in Goodland, Kansas, and the mortgage was recorded in the office of the Sherman County Register of Deeds.

---

[1] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K). There is no objection to venue or jurisdiction over the parties.

The parties stipulated that "one of the improvements located on the Property is a mobile, modular, or manufactured home as defined by Kansas Statutes section 58-4202."[2] The only witness testifying about the property mortgaged to the Bank was Debtor Garey Brouillette. Debtors bought the property in about 1977, after construction of the dwelling, and have lived there ever since. When testifying, Debtor referred to the dwelling as a modular home. He is not certain of the manufacturer or the model number and does not know if there was ever or presently is a certificate of title. The dwelling is approximately 28 by 70 feet in size and has three bedrooms and 1 and 3/4 baths. The home was not built to be mobile; rather it was intended to be installed on footings or a foundation. Under the flooring there are wooden joists, and "probably a steel underframe." The Debtors' dwelling is completely encased in brick. The brick walls are constructed on footings and is attached to the dwelling by wall ties. There is no way to remove the dwelling from inside the brick walls without destroying the brick walls, and possibly the dwelling inside the walls. There is an attached brick garage, which was constructed at the site. Additional exterior improvements include a circle drive, a large patio, and landscaping. The shingle roof has been replaced several times. In the mid 1990's Debtors added aluminum to the soffits, fascia, and windows. Within the last year, the interior ceilings have been painted and updates performed on one bathroom. The interior walls are paneled.

Debtors filed for relief under Chapter 7 on February 21, 2007. At that time, the debt owed to the Bank on the home equity line of credit was $41,894.55. Schedule A states $70,000 as the estimated current value of the property. The parties stipulated that a 1998 appraisal

---

[2] Doc. 40, ¶ 6.7.

obtained by the Bank valued the property at $64,000 as of February 20, 1998[3]; that the Sherman County Appraiser's Office valued the property in its entirety at $70,000 as of March 1, 2007; and that of the $70,000 value, the Sherman County Appraiser's Office allocated "$10,090 to the land and $59,910 to the manufactured home."[4] Debtor testified that he did not know the value of the dwelling, the manufactured housing.

Since the filing of the bankruptcy, Debtors have remained current on their payments to the Bank. On May 9, 2007, the Trustee filed the Complaint to avoid the lien in the dwelling and preserve it for the benefit of the estate. The defendants are the Bank and the Debtors.[5]

**ANALYSIS AND CONCLUSIONS OF LAW.**

The Trustee seeks to avoid the Bank's lien in only part of the Bank's collateral, the manufactured dwelling, which according to the Trustee, is personal property. The Trustee does not seek to avoid the Bank's lien in the land and site improvements, including the brick surrounding the dwelling, the attached garage, the driveway, the patio, and the landscaping. The valuation and remedy issues are obvious. How does a court value a manufactured house which cannot be removed from the property without destruction of the brick exterior? What are the Trustee's rights upon avoidance? The Trustee contends value is evidenced by the county tax appraisal and, if the lien is avoided, he steps into the shoes of the Bank and is entitled to post-

---

[3] Doc. 40, ¶ 6.16.

[4] Doc. 40, ¶ 6.41.

[5] Debtors have not opposed lien avoidance, and a default judgment has been entered. Doc. 31. Debtor Garey Brouillette appeared at trial only as a witness called by the Trustee.

petition payments from the Bank and/or the Debtors in the amount of the avoided lien.[6] Before reaching the valuation and remedy issues, however, the Court must first determine whether the Bank's lien in the dwelling is avoidable.

The Trustee is attempting to avoid the Bank's lien in Debtors' dwelling pursuant to § 544(a). "Under section 544(a)(1), upon commencement of a case, the trustee has the status of a creditor with a judicial lien on all property on which a creditor could have obtained a judicial lien, whether or not such a creditor actually exists."[7] In other words, the trustee has the power to

---

[6] The Tenth Circuit Court of Appeals in *In re Haberman*, __ F.3d __, 2008 WL 466398 (10th Cir. 2008) recently affirmed that, although upon avoidance of a lien pursuant to § 544 the lien is automatically preserved for the benefit of the estate pursuant to § 551, the Trustee does not acquire the lienholder's contractual rights against the debtor. Hence, the Trustee acknowledges that if he is successful in avoiding the lien in the dwelling, he would not automatically have a right to collect post-petition payments that have been made to the Bank post-petition or will be due the Bank after avoidance. As to the authority for the requested remedy, he therefore relies upon three interim orders.
 On May 9, 2007, simultaneously with the filing of the Complaint, the Trustee filed a Motion Requiring Debtors to Make Monthly Payments to Trustee (Doc. 3). The Bank opposed the motion (Doc. 8), and a hearing was held. After the hearing, an Agreed Journal Entry and Order (Doc.13), prepared by the Trustee, was entered. The Trustee contends that pursuant to the order, if it prevails on its claim of lien avoidance, it is entitled to recover from the Bank any post-petition payments attributable to the value of any lien avoided. The Bank challenges this interpretation of the order.
 The Trustee also prepared two orders relating to Debtors. The first states that Debtors' claim of homestead is set aside to the extent the lien on the residence is avoided (Case no. 07-10284, Doc. 29). The second resolved the Trustee's motion for default judgment against the Debtors for failure to oppose the lien avoidance complaint (Doc. 31). It provides that if the Trustee is successful in avoiding the Bank's lien and, if the lien is not otherwise satisfied, Debtors will satisfy the lien by executing a promissory note requiring monthly payments to the Trustee, plus interest.
 If the Trustee were successful, the Court would not enforce these orders in the manner requested by the Trustee. Without hesitation, the Court would set aside these interim orders and order a remedy in accord with equity and the rights granted to the Trustee by the Code. When entering the agreed orders, the Court did not intend to grant the Trustee any remedies not provided by law or to predetermine the manner for allocating post-petition payments. The intent of the Court in these cases is always to preserve the trustee's rights while protecting the debtors and the lienholder to the extent possible, not to impose additional burdens upon them, such as waiver of homestead rights or imposing an obligation to pay interest.

[7] 5 *Collier on Bankruptcy* ¶ 544.05 (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 5th ed. rev. 2007).

5

avoid any lien that a hypothetical creditor with an unsatisfied judicial lien on the debtor's property could avoid under relevant state nonbankrutpcy law.[8] The avoidance power of the Trustee under § 544(a) is described by the Tenth Circuit Court of Appeals as follows:

> Section 544(a) of the Bankruptcy Code "confers on a trustee in bankruptcy the same rights that an ideal hypothetical lien claimant without notice possesses as of the date the bankruptcy petition is filed." Consequently, "[s]ection 544(a) allows the trustee to avoid any unperfected liens on property belonging to the bankruptcy estate." The determination of whether a creditor's security interest is unperfected, and therefore avoidable under § 544(a), is controlled by state law.[9]

In this case, avoidance of the lien on the dwelling turns upon whether the Bank's lien was perfected under Kansas law. As the party seeking to avoid the Bank's lien, the Trustee has the burden of proof.[10]

The sole basis for the Trustee's avoidance claim is that the dwelling is subject to the title requirements of the Kansas Manufactured Housing Act, K.S.A. 58-4201, et seq. (hereafter KMHA). Under the KMHA, the exclusive means for perfection of a security interest in manufactured homes is by notation of the certificate of title. Although the Bank concedes its lien is not noted on the certificate of title for the dwelling, it does not concede that the KMHA applies to the dwelling. The Court therefore examines the scope of the KMHA.

The KMHA generally addresses the manufacture, distribution, sale, and installation of manufactured homes and mobile homes. It contains provisions for titling and perfecting security

---

[8] *In re Haberman*, __ F.3d __, 2008 WL 466398*2 (10th Cir. 2008).

[9] *In re Charles*, 323 F.3d 841, 842 (10th Cir. 2003) (quoting and citing *Pearson v. Salina Coffee House, Inc.,* 831 F.2d 1531, 1532-33 (10th Cir. 1987)).

[10] *In re Colon*, 376 B.R. 22, 26 (Bankr. D. Kan. 2007).

6

interests in mobile homes and manufactured homes, which are similar to the titling and lien provisions applicable to titled motor vehicles.[11] The KMHA states in relevant part:

> (a) For purposes of this section, a manufactured home or mobile home shall be considered to be personal property.
>
> ***
>
> (c) Upon the transfer or sale of any manufactured home or mobile home by any person or dealer, the new owner thereof . . . shall make application to the division for the issuance of a *certificate of title evidencing the new owner's ownership of such manufactured home or mobile home. . . .* Notwithstanding any other provision of this section, no certificate of title shall be issued for a manufactured home or mobile home having any unreleased lien or encumbrance thereon, unless the transfer of such manufactured home or mobile home has been consented to in writing by the holder of the lien or encumbrance. . . .
>
> (d) *The director shall design a distinctive certificate of title to be issued to owners of manufactured homes and mobile homes, so as to be distinguishable from certificates of title issued to owners of vehicles. The certificate of title shall contain a statement of any liens or encumbrances which the application discloses and shall provide such other information as the director determines necessary and appropriate. . . .*
>
> * * *
>
> (g) Upon sale and delivery to the purchaser of every manufactured home or mobile home subject to a purchase money security interest, as provided for in article 9 of chapter 84 of the Kansas Statutes Annotated, and amendments thereto, the dealer or secured party may complete a notice of security interest . . .. The notice of security interest shall be retained by the division, until it receives an application for a certificate of title to the manufactured home or mobile home and a certificate of title is issued. *The certificate of title shall indicate any security interest in the manufactured home or mobile home. . . .*
>
> * * *

---

[11] K.S.A. 8-135. Prior to the enactment of the KMHA, K.S.A. 8-135 was construed as providing the exclusive means for perfecting a security interest in a mobile home. *In re Trible*, 290 B.R. 838, 842 (Bankr. D. Kan. 2003).

> (i) When a person acquires a security agreement on a manufactured home or mobile home subsequent to the issuance of the original title on such manufactured home or mobile home, such person shall require the holder of the certificate of title to surrender the same and sign an application for a mortgage title in such form as prescribed by the director. . . . *Upon receipt thereof the division shall issue a new certificate of title, showing the liens or encumbrances so created,* but not more than two liens or encumbrances may be shown upon a title. The delivery of the certificate of title, application and fee to the division shall perfect such person's security interest in the manufactured home or mobile home described in the certificate of title, as referenced in K.S.A. 2007 Supp. 84-9-311, and amendments thereto. . . .[12]

The foregoing provisions of the KMHA provide the exclusive manner for perfection of a security interest in a mobile or manufactured home is by notation on the certificate of title.[13]

Therefore, the Trustee is entitled to lien avoidance only if the Debtors' dwelling is a manufactured home or a mobile home. The KMHA contains the following definitions of manufactured home and mobile home:

> "Manufactured home" means a structure which is subject to the federal act and which is transportable in one or more sections which, in the traveling mode, is 8 body feet or more in width or 40 body feet or more in length, or, when erected on site, is 320 or more square feet and which is built on a permanent chassis and designed to be used as a dwelling, with or without permanent foundation, when connected to the required utilities, and includes the plumbing, heating, air conditioning and electrical systems contained therein, and such term shall include any structure which meets all the requirements of this subsection except the size requirements and with respect to which the manufacturer voluntarily files with the United States department of housing and urban development a certification required by the secretary of housing and urban development and complies with the standards established under the federal act, except that such term shall not include any self-propelled recreational vehicle.

---

[12] K.S.A. 2007 Supp. 58-4204 (italics supplied).

[13] *In re Trible*, 290 B.R. at 843.

8

> "Mobile home" means a structure which is not subject to the federal act and which is transportable in one or more sections which, in the traveling mode, is 8 body feet or more in width and 36 body feet or more in length and is built on a permanent chassis and designed to be used as a dwelling, with or without a permanent foundation, when connected to the required utilities, and includes the plumbing, heating, air conditioning and electrical systems contained therein.[14]

The KMHA also provides a definition of a modular home, as follows:

> "Modular home" means a structure which is: (1) Transportable in one or more sections; (2) designed to be used as a dwelling on a permanent foundation when connected to the required utilities, and includes the plumbing, heating, air conditioning and electrical systems contained therein; and (3) certified by its manufacturer as being constructed in accordance with a nationally recognized building code.[15]

Modular homes are not subject to the KMHA titling and perfection requirements quoted above.[16] Like a manufactured or mobile home, a modular home is constructed off site, is transported to the home site, and installed prior to use. However, a modular home is designed to be installed on a permanent foundation, and a permanent chassis is not required.

The Trustee has failed to sustain his burden to show that the Debtors' dwelling is subject to the KMHA. The parties stipulated as follows: "One of the improvements located on the Property is a mobile, modular, or manufactured home as defined by Kansas Statutes section 58-4202."[17] To be a manufactured home or a mobile home the dwelling must be built upon a

---

[14] K.S.A. 58-4202(a) and (b).

[15] K.S.A. 58-4202(c).

[16] K.S.A. 2007 Supp. 58-4204; *In re Trible*, 290 B.R. at 842, n.6.

[17] Doc. 40, Stip. ¶ 6.7.

9

permanent chassis. The Trustee did not prove this portion of the definition. Although the Debtor testified that there "is probably a steel underframe," there was no testimony about a permanent chassis. On the other hand, Debtor also unequivocally testified that the dwelling was intended to be installed on a foundation or footings. One of the characteristics that distinguishes a modular home from a manufactured home or a mobile home is that a modular home is "designed to be used as a dwelling on a permanent foundation."[18] The evidence, although sparse, is more consistent with the dwelling being a modular home, rather than a manufactured or mobile home.

Because the Trustee has not proven that the dwelling is a mobile home or a manufactured home, the exclusive manner for perfection of the Bank's lien was not by notation on a certificate of title. A modular home satisfies the Article 9 definition of a fixture.[19] The Bank's mortgage granted the Bank a lien in all improvements and fixtures on the described real property, and recording of the mortgage perfected its interest in the fixtures.[20]

However, even if the KMHA did apply and the Bank's lien is avoidable because not perfected by notation on the certificate of title for the dwelling, the Trustee could not prevail because he has failed to establish the value of the avoided lien. The Trustee provided no evidence of the value of the alleged personal property interest. Debtor, the only witness who

---

[18] K.S.A. 58-4202(c).

[19] K.S.A. 84-9-313 (Ensley 1983); K.S.A. 2007 Supp. 84-9-102(41).

[20] K.S.A. 84-9-401 (Ensley 1983) (proper office for filing a fixture filing is the office designated for recording mortgages); K.S.A. 2007 Supp. 84-9-501(a) (proper office for filing a fixture filing is the office designated for recording mortgages); K.S.A. 2007 Supp. 84-9-502(c) (record of mortgage effective as financing statement); see *Prairie State Bank v. Superior Housing, Inc.*, 30 Kan. App.2d 273, 40 P.3d 336 (2002) (holding that lien in modular home arising from recorded mortgage was of lower priority than creditor's perfected inventory lien).

was asked about value, testified that he had no idea of the separate value of the dwelling. The only evidence in the record coming close to separating the real property value from the alleged personal property (the dwelling) value is the stipulation that the County Appraiser assigned a value of $10,090 to the land and $70,000 to the entire property. The Court rejects the Trustee's position, based upon the County Appraiser's valuation, that the personal property (the dwelling) value is the difference between the total value of Debtors' homestead and the value of the land, or approximately $60,000. There is no evidence of the basis for the county appraiser's allocation of value between the land and the improvements. The dwelling is approximately 30 years old and cannot be removed from the property without destruction of the brick walls. The real property interests subject to the mortgage are more than the land. The Trustee concedes that the garage, the brick facing built around the residence, the driveway, the patio, and the landscaping are real property interests. There is no evidence of value of these interests. In *Trible*,[21] a Wichita case decided by Chief Judge Nugent on which the Trustee relies, the lien avoidance claim was submitted on stipulated facts and briefs. The Court held an unperfected lien in a mobile home could be avoided but ruled that the county appraiser's valuation of the real property, which, as in this case, separately appraised the land and the improvements, was insufficient to allocate a value to the personal property interest.[22] An evidentiary hearing was scheduled.[23] In this case, an evidentiary hearing has been held, and the Trustee has presented no

---

[21] *In re Trible*, 290 B.R. at 838.

[22] *Id.* at 846.

[23] *Id*. When determining the value of the avoided lien in *Trible* after the evidentiary hearing, the court, relying upon § 506(a) and *Assoc. Commercial Corp. v. Rash*, 520 U.S. 953 (1997) valued the mobile home in light of the debtor's intent to remain in the home, rather than on replacement cost. However, since the decision in *Trible*, a new subsection (2) was added to § 506(a) which requires that in individual Chapter 7 cases personal property acquired for personal, family, or household purposes be

11

Case 07-05165    Doc# 52    Filed 06/02/08    Page 11 of 13

evidence other than the unexplained results of the county appraisal. The Trustee has failed in his burden to establish the value of the avoided lien.

When opposing the Trustee's complaint, the Bank contends that the perfection method of the KMHA does not apply to the dwelling because the it was manufactured in the mid 1970's and the KMHA was not enacted until 1991. The Trustee contends the KMHA applies to all mobile and manufactured homes, even those manufactured prior to 1991. This has been the holding in other Wichita, Kansas lien avoidance cases where the dwelling was a mobile home or manufactured home built before 1991.[24] The court reasoned that prior to the KMHA security interests in mobile homes were perfected in the same manner as motor vehicles, by notation on the certificates of title, and the enactment of the KMHA merely transferred the applicable statutes from the vehicle code to the KMHA without changing the substance of the procedures. This Court agrees with the Trustee that if the Trustee had proven that the dwelling is either a mobile home or a manufactured home, the KMHA method of perfection would be controlling.

**CONCLUSION.**

For the foregoing reasons, the Court holds that the Trustee is not entitled to avoid the lien of the Bank in the Debtors' dwelling. The Trustee has not sustained his burden of proof to show

---

valued at replacement cost, defined to mean the retail price. Assuming, without deciding, that replacement cost is the appropriate standard, the Trustee failed in his burden of proof to establish such value.

[24] *In re Trible*, 290 B.R. at 841-44 (holding exclusive method to perfect a security interest in a 1987 mobile home was by notation on the title in accord with the KMHA); *In re Olson*, case no. 03-11367; adv. no. 03-5195 (Bankr. D. Kan. June 22, 2005) (holding that exclusive method to perfect a security interest in a 1974 manufactured home was by notation of certificate of title in accord with KMHA).

12

that the dwelling is a mobile or manufactured home for purposes of the KMHA and to establish the value of the lien in the dwelling.

The foregoing constitute Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure which makes Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

###